## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| Maria Krott, *individually* | ) | |
| *and on behalf of all others* | ) | |
| *similarly situated*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | No. 4:19-cv-00915-DGK |
| | ) | |
| NEW DIRECTIONS BEHAVIORAL | ) | |
| HEALTH, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DIRECTING THE PARTIES TO SUPPLY ADDITIONAL
## INFORMATION AND BRIEFING

Pending before the Court is the parties' Joint Motion for Approval of Collective Action Settlement. ECF No. 55. The parties seek Court approval of a collective action "opt-in" settlement compromising thirty-two individuals claims under the Fair Labor Standards Act ("FLSA").

After carefully reviewing the proposed settlement ("the Settlement"), ECF No. 56-1, and Plaintiffs' Suggestions in Support, ECF No. 56, the Court requires additional information and briefing on the following issues before it can potentially approve the Settlement.

### Discussion

After bringing a lawsuit under the FLSA, an employee can settle his or her FLSA claim only if the parties agree on a settlement and the district court enters a stipulated judgment. *Beauford v. Action Link, LLC*, 781 F.3d 396, 406 (8th Cir. 2015) (citing *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008)) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). A district court may approve an FLSA settlement only if it finds 1)

the litigation involves a bona fide dispute over FLSA provisions; and 2) the proposed settlement is fair and reasonable. *Lynn's Food Stores, Inc.*, F.3d at 1355.

The record demonstrates there is a bona fide dispute over FLSA provisions here. The Court's concerns go to whether the Settlement is fair and reasonable.

**A.** **The Court directs more in-depth briefing concerning how the proposed settlement is fair and reasonable in light of the apparent strength of the opt-in Plaintiffs' claims.**

As best the Court can tell from the existing record, Plaintiffs appear to have strong claims. The Fifth Circuit Court of Appeals and a district court in the Seventh Circuit have both held that analogous workers—employees primarily performing utilization review work—are not exempt from overtime pay under the professional and administrative exemptions to the FLSA. *Clark v. Centene Co. of Texas, L.P.,* 656 F. App'x 688 (5th Cir. 2016) (case managers primarily performing utilization review work held to be non-exempt under professional and administrative exemptions); *Rego v. Liberty Mut. Managed Care, LLC,* 367 F. Supp. 3d 849, 862 (E.D. Wis. 2019) (same). Although the Eighth Circuit has not ruled on this issue, and the facts of this case are undoubtedly different, it is plausible the Eighth Circuit would reach a similar result in this case.

One could argue, however, that the Settlement does not reflect the strength of the Plaintiffs claims. Plaintiffs' Counsel description of the Settlement as providing the opt-in Plaintiffs with "91 [percent] of the overtime wages they are owed," Suggestions in Supp. at 12, is problematic. It appears the Settlement provides a much lower percentage of the overtime wages owed. The workers at issue here are salaried employees, so presumably they never received any additional money when they worked more than forty hours a week. Overtime wages are paid at 150 percent of the regular rate, thus when Plaintiffs worked overtime, they should have been paid at time and a half the regular rate. But the Settlement calculates owed overtime wages at "*half* the Regular Rate," not time and a half. Settlement at Section III, ¶ 9(d) (emphasis added). If Defendant never

paid the workers any additional money for overtime hours worked, even at a regular rate of pay, and the Settlement is paying these hours at half the regular rate, then the opt-in Plaintiffs are receiving only 1/3 of their overtime wages due. Thus, it appears the Settlement is paying closer to 30 percent of the overtime wages owed. But perhaps the Court has overlooked some detail in this calculation.

Related to this, it appears the Settlement discounts the opt-in Plaintiffs' claims for liquidated damages which they would be entitled to if they prevailed after trial. Of course, for tax purposes the Settlement allocates half of the settlement payment to liquidated damages. *Id*. at Section III, ¶ 10. And aside from the tax treatment, it does not matter whether Plaintiffs are receiving their money for unpaid overtime wages or liquidated damages, because money is fungible. But since Plaintiffs' Counsel assert the Settlement provides the opt-in Plaintiffs with "91 [percent] of the overtime wages they are owed," the Court would like some discussion of how liquidated damages were factored into this figure, or a confirmation that the 91 percent figure excludes liquidated damages.

Also, the Court cannot tell from the existing record why the Settlement is premised on seven hours of overtime work for 80 percent of the work weeks during the limitations period. Is seven hours of overtime an average derived from some verifiable source (like time cards or badge swipes at an electronic building entrance), or were the parties forced to estimate a weekly overtime average because time records do not exist? Likewise, the Court would like the parties to explain why only 80 percent of each Plaintiff's work weeks will be counted towards the total overtime wages owed. The settlement agreement states "[b]ecause the pay data produced by Defendant did not include vacations, holidays, or sick days, Plaintiff's Counsel reduced the total [o]vertime [w]ages [o]wed for each [s]ettlement [c]lass member by 20 [percent] to account for pay periods

3

when they worked less than a full work week." *Id*. at Section III, ¶ 9.  This provision has the effect of discounting the claims of class members who took less vacation time or rarely took sick days, which is less than ideal.  Perhaps the parties chose the 80 percent figure for a perfectly sound reason, such as a more accurate calculation of each class member's overtime hours worked was not possible or practicable.  That would be understandable.  In any event, the Court would like Plaintiffs' Counsel to explain in greater detail how these numbers were determined.

Finally, since it appears the Settlement heavily discounts the opt-in Plaintiffs' claims, the Court would like to know more about what weaknesses in the case leads Plaintiffs' Counsel to believe the Settlement is fair and reasonable to their clients.  The brief explanation given by the Suggestions in Support—that the Settlement eliminates the possibility of decertification or a loss on summary judgment, at trial, or on appeal, while providing the certainty of payment now of "almost full value" —is too generic to provide meaningful guidance in determining whether the Settlement is fair and reasonable.  The Court directs Plaintiffs' Counsel to explain in greater detail why they believe the Settlement is fair and reasonable.  If necessary, they may file this explanation under seal.

**B.      The parties shall brief how the Court has jurisdiction over the parallel state law overtime wage claims released by the opt-in Plaintiffs as part of the Settlement.**

Under the Settlement, the opt-in Plaintiffs "will release Defendant . . . from any and all claims or causes of action he or she has under the [FLSA] and under parallel state law for unpaid overtime wages" during the limitations period.  Settlement at Section III, ¶ 2; Notice of Settlement, ECF No. 56-3.  This includes, state law wage and hour claims which were not pled in the Complaint.  *See* Compl., ECF No. 1.  The Court also notes the opt-in Plaintiffs have arguably consented only to Plaintiffs' Counsel representing them on their FLSA claims and to submit to the Court's jurisdiction for adjudication of their FLSA claims.  *See*, *e.g.*, Consent to Join, ECF No. 33;

Proposed Notice of Lawsuit, ECF No. 29-2. In the Court's experience, when state law wage and hour claims are extinguished in conjunction with an FLSA settlement a Rule 23 Settlement class is typically formed so the Court has jurisdiction. In light of the above, the Court has concerns whether it has jurisdiction over any state law claims.

The Court directs the parties to file a brief explaining how the Court has jurisdiction over the opt-in Plaintiffs' state law claims. This briefing should include pinpoint citation to relevant Eighth Circuit law.

### C. The Court needs more information regarding the amount of work performed by Plaintiff's Counsel.

When an award of attorneys' fees is negotiated separately from the plaintiff's FLSA claims, the district court does not review or approve the agreement on attorneys' fees. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). But the district court must still "ensure the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim, and there was no conflict of interest between the attorney and his or her client." *Id*. at 1027 n.1.

In this case, the existing record bears some indicia of collusion suggesting the attorneys' fees may not have been negotiated without regard to the client's FLSA claims and that there could be a conflict of interest. Plaintiffs' Counsel negotiated a $290,000 settlement under which they will receive $150,000 ($146,392.89 for fees and $3,607.11 for expenses), and the opt-in Plaintiffs will receive $127,750. Hence, the clients—who appear to have fairly strong claims—are receiving less money than their attorneys. No depositions have been taken, no formal discovery has occurred,[1] and, with the exception of conditional class certification, no motion work has occurred. Although Plaintiffs' Counsel state they have more than $210,000 worth of time in the case, there

---

[1] Defendant informally produced some time and pay data to Plaintiffs. Aff. at ¶ 20; ECF No. 56-2.

5

is no documentation of this in the record. Finally, the settlement includes a clear sailing provision,[2] which is potentially concerning. Settlement at Section III, ¶ 11.b; *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested.").

Plaintiffs' counsel state they negotiated their fees and expenses only after negotiating the client's recovery for the FLSA claims, and suggest that should be the end of the Court's inquiry. Suggestions in Supp. at 14-15, ECF No. 56.

Given the Settlement provisions and the paucity of information in the existing record about the amount of work performed in the case, the Court needs additional information to ensure the fee award is not the product of collusion or a conflict of interest. Reviewing more detailed information will allow the Court to make an intelligent, informed decision. It will also boost public confidence in the fairness of the Court's decision whether to approve the Settlement, and hopefully dispel some of the cynicism surrounding the awarding of attorneys' fees in class and collective action cases.

Accordingly, the Court orders Plaintiffs' Counsel to file: (1) detailed documentation of the time each individual attorney or staff member spent on this case,[3] including how that time was recorded (i.e., contemporaneously recorded, or reconstructed later) along with that individual's hourly billing rate; (2) a detailed list of expenses incurred; and (3) their attorneys' fee agreements.

---

[2] Under a clear sailing agreement, "the defendant agrees not to contest the amount awarded by the court presiding over the settlement as long as the award falls beneath a negotiated ceiling." William D. Henderson, Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements, 77 Tul. L. Rev. 813, 814 (2003).

[3] Counsel do not need to supply individual billing records, although they may do so if that is more convenient.

The Court sees no need for these records to be filed under seal, but if counsel has a compelling reason, they may move to do so. These records shall be filed on or before October 7, 2021.

## Conclusion

The Court directs the parties to file responsive joint briefing on these issues within thirty (30) days, with the exception of the documentation of the time Plaintiffs' Counsel has spent working on this case, which shall be filed on or before October 7, 2021.

In lieu of the proposed briefing, the parties may propose an amended settlement that addresses the Court's questions and concerns.

**IT IS SO ORDERED.**

Date: _____August 26, 2021_____       _/s/ Greg Kays_____
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT

7